IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DANIEL W. TESTERMAN,**

      Petitioner,

v.                                               **Civil Action No. 1:09CV74**
                                                         **Criminal Action No. 1:05CR4**
**UNITED STATES OF AMERICA,**                 **(JUDGE KEELEY)**

      Respondent.

**REPORT AND RECOMMENDATION
THAT §2255 MOTION BE DENIED**

**I. Introduction**

On June 2, 2009, *pro se* petitioner, Daniel Testerman ("Petitioner"), filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1] On July 28, 2009, the Government was ordered to respond.[2] On August 25, 2009, the Government filed its Response.[3] On December 1, 2009, Petitioner filed his Reply.[4]

**II. Facts**

**A. Conviction and Sentence**

On January 5, 2005, Petitioner was named by a federal grand jury in a four count indictment.[5] Petitioner was charged in Count One with knowingly possessing child pornography in violation of

---

[1] Dkt.# 113.

[2] Dkt.# 120.

[3] Dkt.# 122.

[4] Dkt.# 123.

[5] Dkt. # 1.

1

Title 18 United States Code Section 2256 and in Counts Two through Four with receiving child pornography in violation of Title 18 United States Code Section 2252(a)(2)(A). Petitioner proceeded to trial, and on February 6, 2006, was convicted on all four counts.[6] Defendant was sentenced on May 16, 2006, to 60 months incarceration on Count One and 108 months incarceration on Counts Two through Four, all to run concurrently for a total period of 108 months incarceration.

**B.     Direct Appeal**

Petitioner filed a direct appeal of his sentence to the Fourth Circuit Court of Appeals on December 21, 2007.[7] As grounds therein, Petitioner asserted the following:

(1)     The District Court erred in denying his motion to suppress evidence seized pursuant to two search warrants issued without probable cause;

(2)     The District Court abused its discretion by disallowing testimony under Fed. R. Evid. 701 concerning the alteration of digital photographs; and

(3)     trial counsel provided ineffective assistance.

On January 30, 2008, in a Per Curiam opinion, the Fourth Circuit Court of Appeals found no error in the Petitioner's conviction and affirmed the District Court's decision.[8]

On June 3, 2008, petitioner filed a writ of certiorari with the United States Supreme Court,[9] which was denied on June 30, 2008.[10]

---

[6] Dkt. # 76.

[7] 4th Cir. Dkt. # 80 (06-4558).

[8] Dkt. # 107.

[9] 4th Cir. Dkt. # 85 (06-4558).

[10] 4th Cir. Dkt. # 86 (06-4558).

### C. **Federal Habeas Corpus**

**Petitioners' Contentions (Dkt.# 113)**

In his federal habeas petition, the Petitioner raises the following issues:

(1) lack of jurisdiction because the Government failed to prove any connections made outside West Virginia;

(2) ineffective assistance of counsel at trial because:

   (a) counsel failed to object when the CPU (central processing unit) and hard drives of petitioner's computer, which had previously been suppressed as evidence, were used during trial;

   (b) counsel failed to conduct a proper investigation of petitioner's computer to determine if any virus or trojan had infiltrated the computer, causing the pornographic images to be placed on Petitioner's computer without his knowledge; and

   (c) counsel failed to argue that the Government's closing arguments misled the jury; and

(3) ineffective assistance of appellate counsel for failing to raise issues 2(a),(b) and (c) *supra*, on appeal.

Petitioner alleges that he did not raise any of these issues on direct appeal because his counsel was ineffective.

**Government's Response (Dkt.# 122)**

(1) Petitioner's lack of jurisdiction claim is defeated because the Government proved the images were obtained through the internet;

(2) Petitioner's IAC claims are defeated because:

   (a) Petitioner's claim that suppressed evidence was used during trial is factually incorrect;

   (b) Petitioner's claim that counsel failed to conduct a proper investigation ignores all the trial testimony that proved Petitioner placed the images on the computer; and

(c) assuming *arguendo* that the Government misspoke, the jury was instructed that the closing arguments by counsel are not evidence; and

(3) Petitioner's claims for lack of jurisdiction and IAC for failure to investigate and failure to object to the prosecution's closing arguments are procedurally barred.

**Petitioner's Reply (Dkt.# 123)**

In his reply, Petitioner reiterates his claims previously made in his § 2255 motion, and refutes the Government's position on the same:

(1) The Government did not prove jurisdiction because it failed to prove the element of shipping or transporting in interstate commerce;

(2) Petitioner's Motion to Suppress was granted as to his CPU; however, the CPU was used and referred to during trial many times;

(3) Petitioner's counsel was ineffective by failing to order a virus scan, which may have provided evidence of innocence;

(4) Petitioner's claims are not procedurally barred because they are constitutional issues; and

(5) an evidentiary hearing is necessary to determine whether the jury was misled by statements made during prosecution's closing arguments.

**D.     Recommendation**

Based upon a review of the record, the undersigned recommends that Petitioner's §2255 motion be denied and dismissed from the docket because the Government proved jurisdiction and Petitioner did not receive ineffective assistance of counsel.

### III.  Analysis

**A.     Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded

the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

## B. Procedurally Barred Claims

Before evaluating the merits of Petitioner's claims, the Court must determine which of Petitioner's issues he may bring in his § 2255 motion and which are procedurally barred.

It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976). Constitutional errors that were capable of being raised on direct appeal but were not may raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). Claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal. See United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096 (2000); White v. United States, 2006 U.S. Dist. LEXIS 45122, at *7-8 (S.D. W.Va. June 20, 2006).

Petitioner's Claim #1: Petitioner may raise the issue of lack of jurisdiction because constitutional issues may be raised so long as the Petitioner demonstrates cause and actual prejudice.

Petitioner's Claims #2(a),(b),(c) and 3: Petitioner may raise the issue of his counsel's ineffectiveness because claims of ineffective assistance of counsel are more appropriately raised on collateral attack than on direct appeal. See Richardson, 195 F.3d at 192.

5

**C.      Ground 1: Whether the Government Failed to Prove Jurisdiction.**

Petitioner alleges the Government failed to prove jurisdiction because the Government did not show that: any internet connections were made outside of the state of West Virginia; any state borders were crossed to download the images; or that any of the images were shipped, mailed, or transported in interstate commerce. The Government contends that it did prove jurisdiction and the record is replete with evidence that the pornographic images of children were obtained through the internet. In his reply, Petitioner relies on United States v. Schaefer, 501 F.3d 1197 (10th Cir. 2007) and argues that obtaining images through the internet is not enough to prove movement in interstate commerce.

The Court cannot agree with Petitioner and finds the Government did establish jurisdiction. In Schaefer, the Court held that under 18 U.S.C. § 2252A, "it is not enough to assume that an Internet communication necessarily traveled across state lines in interstate commerce." Schaefer, 501 F.3d at 1200-01. However, Petitioner's reliance on Schaefer is misplaced. First, Schaefer is not binding on this Court. Second, and most important, Congress responded to Schaefer by amending § 2252A to make clear that the assumption that Internet communication traveled in interstate commerce governs in future cases. U.S. v. Swenson, 335 Fed.Appx. 751, 753 (10th Cir. 2009). Through its expert witness Melinda Cash, the Government proved that Petitioner downloaded the pornographic images of children using the Internet. In connection with this case, Cash was given a computer, nine diskettes, and two compact disks seized from petitioner's home and asked to examine the computer, create a mirror image of its hard drive, extract the files found therein - particularly the image graphic type files, provide a file listing, and extract relevant Internet

6

information.[11]  After Cash copied and extracted the files, the source of each file was determined based on the file names.  Cash testified that Petitioner downloaded the pornographic images of children using the peer-to-peer file sharing network applications, Kazaa Light and iMesh,[12] which operate completely through the Internet.[13]   Because the Government, through its expert witness Melinda Cash, established Petitioner downloaded the child porn images  from the Internet, the Government satisfied the requirements of the amended § 2252A, which established that the use of the  Internet was enough to satisfy the jurisdictional prong.[14]  Accordingly, Petitioner's claim must fail.

### Ground 2: Whether Petitioner's Trial Counsel was Ineffective.

Petitioner argues his counsel was ineffective because counsel failed to object when suppressed evidence was used during trial; counsel failed to conduct a proper investigation or virus scan of his computer to determine if any "viruses, trojans or other hacking tools" had infiltrated it, thereby  permitting the pornographic images of children to be downloaded  without petitioner's knowledge; and counsel failed to argue that the Government's closing arguments misled the jury.

Claims of ineffective assistance of counsel are measured under a two-part analysis outlined in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  First, the petitioner must show that his

---

[11] Dkt # 96; P. 296-97.

[12] Dkt # 96; P. 322.

[13] Dkt. # 96; P. 324-36.  The networking application operates through file sharing on a central Super Node through the Internet.  Users can search for and share files through the network.  Users searching for files must type in a search term.  The Super Node then looks at all other users' information to determine what users are sharing information that matches that search term.  The results are then communicated to the user searching for the files, and the user can then download those files from other users.

[14] Title 18 U.S.C.A. § 2252A(a)(1) makes it unlawful for a person to knowingly mail, transport, or ship "using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography[.]"

counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90. Second, the petitioner must demonstrate he was prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

**2(a). Whether Counsel Was Ineffective for Failing to Object to the Use of Suppressed Evidence at Trial**

Petitioner argues that suppressed evidence was used against him at trial, apparently without objection by trial counsel. In support of this, petitioner quotes Magistrate Judge Kaull's April 28, 2005 Report & Recommendation ("R&R") that his motion to suppress "the CPU, but not its contents (the files contained in its hard drive and diskettes, be GRANTED." (Dkt.# 26 at 23). Further, Petitioner claims, the "hard drives were also suppressed yet they were also used during trial. Only the information contained within were not [sic] suppressed." (Dkt.#113 at 6). The Government correctly notes that Petitioner's claim that suppressed evidence was used at trial is factually incorrect because the CPU was used at trial for demonstrative purposes only and was not admitted into evidence.

Petitioner is either being deliberately disingenuous or else he completely misunderstands

the distinction between evidence and demonstrative exhibits. The April 28, 2005 R&R specifically stated ". . . as to the CPU . . . it was lawfully seized under the circumstances and now that it has been searched . . . it too should be returned," and then recommended granting petitioner's motion to suppress the CPU itself "but not its contents (the files contained in its hard drives and diskettes)." (Dkt.# 26 at 23). The evidentiary value in the CPU, as petitioner well knows, was its electronic *contents,* which were not suppressed. The April 28, 2005 R&R only recommended that, *inter alia,* petitioner's lawfully-seized CPU be returned to him, along with his unlawfully-seized[15] monitor, scanner, keyboard, photo printer, mouse and digital camera, a recommendation also later adopted in the District Judge's June 6, 2005 Order affirming the R&R. The fact that the CPU and hard drives were used at trial as demonstrative exhibits (as petitioner himself admits) to aid the Government's computer expert's testimony is irrelevant; they were not admitted as evidence; therefore there was no error. Petitioner has failed to prove the first prong of Strickland; counsel's performance in failing to object to this non-issue was neither deficient nor did it fall below an objective standard of reasonableness. It goes without saying that petitioner was not prejudiced by this. Further, as the Government has pointed out, Petitioner has already raised the issue of suppressed evidence on appeal and it was rejected by the Fourth Circuit. Insofar as petitioner is attempting another review of his motion to suppress, it is procedurally barred.

**2(b). Whether Counsel Failed to Conduct a Proper Investigation.**

Petitioner argues that trial counsel's performance was deficient because he never obtained

---

[15] The other items were seized in good faith by the deputy executing the search warrant, who, not being computer-literate and never having executed a search warrant involving a computer before, testified that the computer was "all hooked together" and he believed he needed all the items that were attached to the computer in order to see the photos on the computer. (Report & Recommendation Denying Motion to Suppress/Opinion, Dkt.#26 at 5, 20 - 21, and 23).

9

a virus scan of petitioner's computer to determine if a virus or trojan caused the pornographic images of children to be downloaded and stored on there without petitioner's knowledge. The Government contends that Petitioner's argument ignores the abundant trial testimony that established that Petitioner himself put the images on his computer.

Claims of ineffective assistance of counsel for failure to investigate are analyzed in light of all circumstances, and while counsel "could well have made a more thorough investigation than he did . . . [n]evertheless, in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 446 U.S. 648, 665 n. 38 (1984)). In reviewing the deficient prong in claims of ineffective assistance of counsel, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. 668, 689-90 (1984). Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. Strickland, 466 U.S. at 690 - 691.

Here, the Government's expert computer witness, Melinda Cash, testified at trial that the images were downloaded onto Petitioner's computer using Kazaa Light and iMesh, programs that require that the computer user take affirmative acts to physically download from the internet. (Dkt.# 96-1 at 323). Additionally, Cash testified that although both Kazaa Light and iMesh, once downloaded onto a computer, could be set up to start automatically when the computer was turned on, they were not set up so on Petitioner's computer. Rather, Petitioner's computer was set up in such a way that both programs needed to be manually started after the computer was turned on.

10

Additionally, both programs required that a user name[16] be created and each program was password-protected. (Dkt. # 96-1 at 337-38). Cash also testified that the downloaded images could not be directly placed in a user's "Shared Folder"[17] without the user's direction. (Id. at 325 -327).

Counsel's decision not to obtain a virus scan of petitioner's computer to rule out the possibility of infiltration by a virus or trojan appears to be a reasonable strategic decision, in view of the totality of the evidence found during the almost three and a half years after the initial search of the computer before trial. Further investigation would have confirmed that it could only have been petitioner who had taken the numerous affirmative acts necessary for the images to appear on his computer: initial downloading of the file-sharing software necessary to obtain the pornographic image files; choice of user names for the programs that were individually-tailored to petitioner's personal identity and interests ("Daniel29" and "General Lee"); and the files the pornographic images were stored in on petitioner's computer had to be manually created rather than automatically. Further, a virus scan would not have minimized the risk of petitioner's conviction on the charges. Having made this judgment, petitioner's counsel could reasonably determine that he need not undertake further investigation to obtain information that would be fruitless and would do nothing to help petitioner's case. Counsel complied with the directives of Strickland: "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

---

[16]The username for Kazaa Light was "Daniel29" and the username for iMesh was "General Lee." Testimony from other witnesses at trial indicated that petitioner was 29 years old during much of the time the pornographic images were downloaded, and that he was an avid collector of "Dukes of Hazard" memorabilia, one item of which was an orange Dodge Charger called "General Lee."

[17] A "Shared Folder" is a folder that receives completely downloaded files and stores them for use by the owner and for potential downloading by other users in the file sharing network. Trial Transcript, Dkt.#96-1 at 325 - 327.

judgments." Burger v. Kemp, 483 U.S. 776, 795 (1987) (quoting Strickland at 691).

The Court finds Petitioner's claim is without merit because, though counsel may have taken the additional step to perform a virus scan on the computer, there is no reasonable probability that the outcome of the proceedings would have been different had the virus scan been performed. The Court finds that Petitioner has failed to prove that counsel's performance in this area was deficient or that he was prejudiced by anything counsel did or did not do in this regard. This claim should be denied.

**2(c).  Whether Trial Counsel was Ineffective for Failing to Object to the Prosecution's Misleading Closing Argument to the Jury.**

Petitioner argues that in closing arguments, the prosecutor misled the jury and, presumably, that defense counsel permitted this error to occur without objection. Specifically, Petitioner asserts that the AUSA stated Petitioner "was computer savvy and that [he] had expertise which [he does] not . . . cited [petitioner's] brother as saying [petitioner] was electronically inclined which is partially true . . . [and further stated] in rebuttal closing argument that [petitioner] was circumsized [sic]."[18] (Dkt. # 113, P. 9). Petitioner asserts that this argument was not raised on appeal due to "attorney oversight." The Government contends that even assuming any misstatement by the prosecutor, the jury was properly instructed by the Court that the closing arguments by counsel are not evidence.

"[R]eversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of

---

[18]The prosecutor was referencing earlier testimony regarding emailed photos of the torso of a naked circumcised adult male, depicted from the neck to the knees, that prompted the initial computer investigation resulting in the child pornography charges against petitioner. Witnesses at trial testified that the naked body depicted in the emailed photos was that of petitioner, but petitioner insisted that they could not have been photos of him, because he was uncircumcised and the man in the photos was circumcised.

12

a fair trial." United States v. Chorman, 910 F.2d 102, 103 (4th Cir. 1990) (internal quotations omitted).

During closing arguments, the AUSA made certain statements about Petitioner's extensive computer knowledge and also made certain comments regarding whether he was circumcised. (Trial Transcript, Dkt.# 98 at 729-30 and 753). The jury had already heard abundant trial testimony about both issues, so the AUSA's comments were not unwarranted and were not objected to by defense counsel or the Court. Even assuming, *arguendo,* that these remarks were improper, they did not meet the test in Chorman to deprive Petitioner of a fair trial. The Court instructed the jury that "the statements and argument of counsel are not evidence in the case." (Id. at 703). Therefore, there was no prosecutorial misconduct. Petitioner's counsel cannot be considered deficient per Strickland, 466 U.S. at 687 for failing to object to these statements and petitioner certainly was not prejudiced by them. The jury had heard enough testimony on both issues to draw its own conclusions as to petitioner's innocence or guilt on the charges and its verdict reflected that. This claim lacks merit and should be denied.

**Ground 3: Whether appellate counsel provide ineffective assistance**.

Petitioner's § 2255 argument claims indirectly that appellate counsel was also ineffective, for not raising as issues for appeal: the "suppressed evidence" of the computer CPU and hard drives being used against him at trial; the failure to perform a virus scan on petitioner's computer; and the misleading closing argument made by the AUSA to the jury.

The standard of effective assistance of appellate counsel is the same as for trial counsel. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally

demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal citations and quotations omitted). On review, however, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." Bell v. Jarvis, 236 F.3d at 164. Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the landmark of effective advocacy." Bell v. Jarvis, 236 F.3d at 164 (quoting Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted). However, although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

Petitioner's claim that his appellate counsel was ineffective for not raising the issue of the "suppressed evidence" of the computer CPU and hard drives being used at trial is, as petitioner well knows, categorically false. The CPU and the hard drives contained within it were not the 'evidence' that was suppressed. As stated *supra*, the electronic files that were contained in the CPU and

14

lawfully seized pursuant to the search warrant were the evidence against petitioner; the CPU and hard drives were merely used as demonstrative aids during the Government's computer expert's testimony. It is no surprise that appellate counsel advised petitioner that this "would not be [a] fruitful" issue for appeal, since it is completely without merit. Furthermore, petitioner's appellate counsel did raise the suppression of evidence issue on appeal and it was rejected by the Fourth Circuit. To the extent that petitioner is attempting to re-argue the same issue, it is procedurally barred.

Petitioner's next claim is that appellate counsel failed to appeal the issue of trial counsel's inadequate investigation for failure to perform a virus scan on petitioner's computer, because appellate counsel lacked computer knowledge and "therefore did not know to raise this issue." The Court is unimpressed. As stated *supra,* trial counsel was privy to the overwhelming evidence that it could only be petitioner whose affirmative acts resulted in the presence of the pornographic images of children on his computer. As such, forgoing the extra step of obtaining a virus scan that would not help petitioner's case was not unreasonable under the circumstances. Appellate counsel, recognizing this, winnowed out the weaker arguments for appeal in favor of more promising, nonfrivolous issues. This is not a situation where an ignored issue is clearly stronger than those presented for appellate review, sufficient to over come the presumption of effective assistance of appellate counsel. This claim has no merit and should be denied.

Petitioner's next claim, that appellate counsel was ineffective for not raising the issue of the AUSA's misleading closing argument to the jury, likewise has no merit. A review of the trial transcripts reveals that the AUSA mentioned nothing in his closing arguments that had not already been testified to repeatedly by various witnesses or otherwise admitted into evidence. The Court

properly instructed the jury that closing arguments are not evidence. No prosecutorial misconduct occurred and therefore, appellate counsel's decision not to choose this non-issue for appeal was appropriate. This claim should be denied.

**E.     Request for Evidentiary Hearing**

Because the Court finds the Government proved jurisdiction and Petitioner did not receive ineffective assistance of counsel, no evidentiary hearing is necessary. The request is **DENIED** as moot.

## IV.  Recommendation

Based upon a review of the record, the undersigned recommends that Petitioner's §2255 motion be denied and dismissed from the docket because the Government proved jurisdiction and Petitioner did not receive ineffective assistance of counsel.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: February 8, 2010.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE